UNITED STATES  DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

LEROY PINESTRAW JOHNSON                          CIVIL ACTION

VERSUS                                           NO.  12-2587

BURL CAIN, WARDEN                                SECTION "F"(5)

### REPORT AND RECOMMENDATION

This matter was referred to the undersigned United States Magistrate Judge to conduct a hearing, including an evidentiary hearing, if necessary, and to submit proposed findings and recommendations for disposition pursuant to 28 U.S.C. §636(b)(1)(B) and (C), and as applicable, Rule 8(b) of the Rules Governing Section 2254 Cases in the United States District Courts.  Upon review of the entire record, the Court has determined that this matter can be disposed of without an evidentiary hearing. See 28 U.S.C. § 2254(e)(2).  For the following reasons, **IT IS RECOMMENDED** that the petition for *habeas corpus* relief be **DISMISSED WITH PREJUDICE**.[1]

---

[1] Under 28 U.S.C. § 2254(e)(2), whether to hold an evidentiary hearing is a statutorily mandated determination. Section 2254(e)(2) authorizes the district court to hold an evidentiary hearing only when the petitioner has shown either that the claim relies on a new, retroactive rule of constitutional law that was previously unavailable, 28 U.S.C. § 2254(e)(2)(A)(i), or the claim relies on a factual basis that

Petitioner, Leroy "Pinestraw" Johnson, is a state prisoner incarcerated in the Louisiana State Penitentiary, in Angola, Louisiana.  On October 11, 2001, Johnson was charged by grand jury indictment with second degree murder in violation of La. R.S. 14:30.1.[2]  Johnson pleaded not guilty. On July 9, 2004, after a three-day jury trial, he was found guilty of second degree murder.[3]

Johnson filed a motion for new trial and a motion for post-verdict judgment of acquittal. After a hearing on December 7, 2004, the trial court granted the motion for new trial.[4] Upon application by the State, writs were granted by the Louisiana First Circuit Court of Appeal, and the court of appeal overturned the ruling

---

could not have been previously discovered by the exercise of due diligence, 28 U.S.C. § 2254(e)(2)(A)(ii); and the facts underlying the claim show by clear and convincing evidence that, but for the constitutional error, no reasonable jury would have convicted the petitioner.  28 U.S.C. § 2254(e)(2)(B).

[2] State Rec., Vol. 1 of 7, p. 3 Bill of Indictment by the Tangipahoa Parish Grand Jury.

[3] State Rec., Vol. 1 of 7, p. 1-H, Minute Entry dated July 9, 2004.

[4] State Rec., Vol. 6 of 7, Transcript of December 7, 2004 ruling on motion for new trial, pp. 8-9; State Rec., Vol. 1 of 7, p. 1-I, Minute Entry dated December 7, 2004.

granting a new trial.[5] The Louisiana Supreme Court denied Johnson's request for a supervisory or remedial writ.[6] Johnson was sentenced on February 22, 2006 to life imprisonment without benefit of parole, probation or suspension of sentence.[7] Although a verbal motion to appeal was made at sentencing, that appeal was subsequently dismissed on February 5, 2007 for failure to pay costs.[8]

On July 13, 2006, Johnson filed with the state district court a pro se application for post-conviction relief requesting an out-of-time appeal.[9] Ultimately, Johnson was allowed to proceed with

---

[5] State Rec., Vol. 2 of 7, p. 248, Notice of Intent to Seek a Writ of Certiorari and Prohibition, December 10, 2004; and State Rec., Vol. 6 of 7, State v. Leroy Johnson, 2005 KW 0038 (La. App. 1st Cir. 5/5/05), reh'g denied 2005 KW 0038 (La. App. 1st Cir. 6/8/05).

[6] State v. Johnson, 917 So.2d 1115 (La. 12/16/05) (No. 2005-KK-1544).

[7] State Rec., Vol. 6 of 7, Transcript of sentencing proceedings held February 22, 2006, p. 8. The trial court also denied at this time the previously raised motion by petitioner for post-verdict judgment of acquittal.  Tr. at p. 7. See also State Rec., Vol. 1 of 1, Minute Entry dated 2/22/06.

[8] State Rec., Vol. 2 of 7, Motion to Dismiss Appeal, p. 293 and Notice of Motion to Dismiss Appeal, p. 306.

[9] State Rec., Vol. 2 of 7, p. 259.

3

his out-of-time appeal.[10] In his appeal, Johnson raised the following claims: (1) the evidence was legally insufficient to convict him of second degree murder; (2) the trial judge erred in denying his motion for post-verdict judgment of acquittal; and (3) (pro se assignment of error) can the court conclude beyond a reasonable doubt that the defendant shot the victim in light of the fact that two witnesses testified that the defendant was inside the bar at the time the shooting occurred on the outside.[11]

At the same time his appeal was pending, Johnson began to pursue state post-conviction relief through counsel, Arden Wells.[12] However, Johnson filed a motion on January 10, 2008, requesting

---

[10] The State in its Memorandum in Opposition to the Petition for Writ of Habeas Corpus notes that the state court record does not contain a complete record regarding the out-of-time appeal. What is clear from the State's memorandum in opposition and the state court record is that the State withdrew its objection to Johnson proceeding with his out-of-time appeal; Johnson was at some point granted and proceeded with an out-of-time appeal; and the State concedes that the instant petition is timely. Therefore, the missing documents relate only to the procedural history and do not impede the Court's ability to address the merits.

[11] State v. Johnson, 2008-KA-1575, 2009 WL 839518 (La. App. 1st Cir. 3/27/09).

[12] State Rec., Vol. 2 of 7, p. 279, 305B.

that the application be dismissed because he wanted to pursue his direct appeal instead.[13]  The district court granted his request and dismissed the post-conviction application on January 30, 2008.[14]

On March 27, 2009, the Louisiana First Circuit Court of Appeal affirmed his conviction.[15]  The Louisiana Supreme Court denied relief on January 22, 2010.[16]  Johnson did not seek review to the United States Supreme Court.

Johnson filed applications for post-conviction relief in the state district court on March 1, 2011 and again on March 10, 2011.[17] In these applications, he raised the following claims for relief: (1) his Fifth, Sixth, and Fourteenth Amendment rights were violated when he was denied the right to testify by defense counsel; (2)

---

[13] Id. at p. 312.

[14] Id. at pp. 312-313.

[15] State v. Johnson, 2008-KA-1575, 2009 WL 839518 (La. App. 1st Cir. 3/27/09).

[16] State ex rel. Johnson v. State, 25 So.3d 132 (La. 1/22/10).

[17] According to the certificate of service in his affidavit in support of the post-conviction application, petitioner submitted both applications to prison officials for mailing on February 25, 2011.  See State Rec., Vol. 7 of 7, Uniform Application for Post-Conviction Relief, p. 20.

trial counsel failed to present a defense and to have compulsory process for obtaining witnesses in his behalf; (3) the cumulative effect of the errors raised herein denied him a fundamentally fair adversarial proceeding.  Though not designated by specific claim number, Johnson also asserted that defense counsel deprived him of his Sixth Amendment right to a fair trial when he failed to request a special jury instruction.  The district court addressed and denied each of these claims on the merits in a hearing held on May 6, 2011, wherein Johnson was represented by court-appointed conflict counsel.[18]

On or about August 2, 2011, Johnson sought review of the district court's post-conviction ruling in the Louisiana First Circuit Court of Appeal.[19]  On October 24, 2011, the court of appeal denied relief because Johnson failed to include a copy of all

---

[18] State Rec., Vol. 7 of 7, Transcript of Post-Conviction Relief Evidentiary Hearing on May 6, 2011.

[19] The state court record is incomplete and does not contain a copy of either writ application filed by petitioner in the Louisiana First Circuit Court of Appeal.  The State acknowledges this in its memorandum in opposition and has submitted electronically a copy  of the petitioner's two writ applications, 2011 KW 1401 and 2011 KW 2410, as attachments to the memorandum in opposition, located at Rec. Doc. No. 18.

pertinent records to support his claims.[20]  He was allowed to and
did re-file his application in the court of appeal.   In his
application, Johnson raised the following claims:  (1) his Fifth,
Sixth, and Fourteenth Amendment rights were violated when he was
denied the right to testify by defense counsel; (2) trial counsel
failed to present a defense and to have compulsory process for
obtaining witnesses in his behalf; (3) the cumulative effect of the
errors raised herein denied him a fundamentally fair adversarial
proceeding. Notably, his application did not include any claim
regarding the alleged failure of counsel to request a special jury
instruction.  The court of appeal denied relief without assigning
additional reasons on March 26, 2012.[21]

On or about April 23, 2012, Johnson sought review of the
denial to the Louisiana Supreme Court.[22]   The Louisiana Supreme

---

[20] <u>State v. Johnson</u>, No. 2011-KW-1401 (La. App. 1st Cir.
10/24/11); State Rec., Vol. 7 of 7.

[21] <u>State v. Johnson</u>, No. 2011-KW-2410 (La. App. 1st Cir.
3/26/12); State Rec., Vol. 7 of 7.

[22] State Rec., Vol. 7 of 7, No. 2012-KH-0934 Louisiana
Supreme Court notice to Johnson advising receipt and filing on
April 25, 2012 with filing metered on April 23, 2012.  The state
court record does not contain a file-stamped copy of petitioner's

Court denied relief without assigning additional reasons on September 21, 2012.[23]

On or about October 18, 2012, Johnson filed his federal application for *habeas corpus* relief. The State filed a response conceding that the federal application is timely and that petitioner exhausted his remedies in the state courts.[24] Although the Court is unable to conclude on the incomplete record presented whether one facet of the ineffective assistance of counsel claim (namely, failure to request a special jury instruction) was properly exhausted, and as noted above, the State is unable to produce a full record including the writ application presented to the Louisiana Supreme Court for this Court's review, the Court will address on the merits this facet of the ineffective assistance claim. 28 U.S.C. § 2254 (b)(2) ("An application for a writ of habeas corpus may be denied on the merits notwithstanding the

---

writ to the Louisiana Supreme Court.  The State has not located or provided a copy of the writ application to this court.  Rec. Doc. No. 18, Memorandum in Opposition to Petition for Habeas Corpus, p. 4.

[23] State ex rel. Leroy P. Johnson v. State, No. 2012-KH-0934 (La. 9/21/12); State Rec., Vol. 7 of 7.

[24] Rec. Doc. No. 18, pp. 5-7.

8

failure of the applicant to exhaust the remedies available in the courts of the State.")

I.    Standards of Review

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") comprehensively overhauled federal habeas corpus legislation, including 28 U.S.C. § 2254. Amended subsections 2254(d)(1) and (2) contain revised standards of review for pure questions of fact, pure questions of law, and mixed questions of both. The amendments "modified a federal habeas court's role in reviewing state prisoner applications in order to prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law." Bell v. Cone, 535 U.S. 685, 693 (2002).

As to pure questions of fact, factual findings are presumed to be correct and a federal court will give deference to the state court's decision unless it "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2); see also 28 U.S.C. § 2254(e)(1) ("In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the

judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.").

As to pure questions of law or mixed questions of law and fact, a federal court must defer to the state court's decision on the merits of such a claim unless that decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1). Courts have held that the "'contrary to' and 'unreasonable application' clauses [of § 2254(d)(1)] have independent meaning." Bell, 535 U.S. at 694.

Regarding the "contrary to" clause, the United States Fifth Circuit Court of Appeals has explained:

> A state court decision is contrary to clearly established precedent if the state court applies a rule that contradicts the governing law set forth in the [United States] Supreme Court's cases. A state-court decision will also be contrary to clearly established precedent if the state court confronts a set of facts that are materially indistinguishable from a decision of the [United States] Supreme Court and nevertheless arrives at a result different from [United States] Supreme Court precedent.

Wooten v. Thaler, 598 F.3d 215, 218 (5th Cir.) (internal quotation marks, ellipses, brackets, and footnotes omitted), cert. denied, 131 S.Ct. 294 (2010).

Regarding the "unreasonable application" clause, the United States Supreme Court has explained:

> [A] state-court decision can involve an "unreasonable application" of this Court's clearly established precedent in two ways. First, a state-court decision involves an unreasonable application of this Court's precedent if the state court identifies the correct governing legal rule from this Court's cases but unreasonably applies it to the facts of the particular state prisoner's case. Second, a state-court decision also involves an unreasonable application of this Court's precedent if the state court either unreasonably extends a legal principle from our precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply.

Williams v. Taylor, 529 U.S. 362, 407 (2000). The Supreme Court has noted that the focus of this inquiry "is on whether the state court's application of clearly established federal law is objectively unreasonable, and we stressed in Williams that an unreasonable application is different from an incorrect one." Bell, 535 U.S. at 694; see also Puckett v. Epps, 641 F.3d 657, 663 (5th Cir.2011) ("Importantly, 'unreasonable' is not the same as

11

'erroneous' or 'incorrect'; an incorrect application of the law by a state court will nonetheless be affirmed if it is not simultaneously unreasonable."), <u>cert.</u> <u>denied</u>, 132 S.Ct. 1537 (2012).

While the AEDPA standards of review are strict and narrow, they are purposely so. As the United States Supreme Court recently held:

> [E]ven a strong case for relief does not mean the state court's contrary conclusion was unreasonable.
> If this standard is difficult to meet, that is because it was meant to be. As amended by AEDPA, § 2254(d) stops short of imposing a complete bar on federal court relitigation of claims already rejected in state proceedings. It preserves authority to issue the writ in cases where there is *no possibility* fairminded jurists could disagree that the state court's decision conflicts with this Court's precedents. It goes no farther. Section 2254(d) reflects the view that habeas corpus is a guard against *extreme malfunctions* in the state criminal justice systems, *not a substitute for ordinary error correction through appeal. As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.*

<u>Harrington v. Richter</u>, 131 S.Ct. 770, 786-87 (2011) (citations omitted; emphasis added); <u>see also</u> <u>Renico v. Lett</u>, 559 U.S. 766,

130 S.Ct. 1855, 1866 (2010) ("AEDPA prevents defendants—and federal courts—from using federal habeas corpus review as a vehicle to second-guess the reasonable decisions of state courts.").

II.  Facts

On direct appeal, the First Circuit Court of Appeal summarized the facts as follows:

> In the early morning hours of September 1, 2001, a fight broke out at Jone's Café-also known as Pyjoe's-involving Winston "Pluck" Ellis and Donnell Mack (the victim) and the defendant and Alfred Greely, Jr. Gun shots were fired. The victim was shot in his left upper buttock and later died from bleeding caused by the gunshot wound.
>
> Greely (the victim's brother) and Alfred Montgomery, Jr. both testified as to what occurred in the bar. According to their testimony, an argument erupted between Pluck and the victim over a game of pool. Pluck retrieved a weapon from near the DJ booth inside the bar and again confronted the victim. A physical fight ensued between the victim and Pluck. During this fight, the defendant, who is Pluck's uncle and who had been working at the DJ booth, began fighting with Greely. Greely struck the defendant, and the defendant fell to the floor.
>
> According to Greely, the victim ran out of the club. The defendant, who also had left the club, came back inside holding a long chrome weapon, which Greely described as either a .357 or .45, and later described as a revolver. The defendant looked around and then ran out the club. Greely testified he heard two shots fired inside the club and two shots fired outside; however, he did not see who fired the shots. After approximately ten to fifteen seconds, Greely fled the club. As Greely ran outside, he

13

heard two gunshots and turned and fled to his right. Greely was not aware that his brother had been shot until sometime later when his uncle arrived at his home and told him his brother was in the hospital.

According to Montgomery, after the initial physical fight between Pluck and the victim and the defendant and Greely, the defendant left the club and returned with a weapon in his hand. Montgomery described the weapon used by the defendant as a long black gun, a .44 or a .45. The victim was still inside the club standing near a pool table. Montgomery said that the defendant fired his weapon once, and the victim fled toward the door. The defendant shot at the victim as he went out the door and missed. Once outside, the defendant fired a third shot at the victim, which also missed. Montgomery stated the defendant then took "dead aim" and shot at the victim a fourth time. When the bullet hit the victim, the victim "flipped." Montgomery heard the victim pleading for his life before the defendant and Pluck began kicking him. The defendant and Pluck backed off when a female cousin threw herself on top of the victim.

Crystal Miller, a first cousin of the victim, was standing outside Pyjoe's on the night of the incident. Miller testified that she saw the victim run out of the club as the defendant ran behind him holding a black, long-barreled revolver. The defendant stopped and shot the victim. As Pluck and the defendant began to kick the victim, she ran over and tried to cover the victim in order to protect him. Miller testified she did not hear any shots fired prior to the victim fleeing the club.

Carolyn Gorman, who was familiar with both the defendant and the victim, testified that she was sitting on the back of a truck directly across the street from Pyjoe's on the night of the incident. According to Gorman, when people began running out of the club, she ran toward the door to see the cause. At that time, the victim was

14

running out and bumped her as he fled the club. Gorman
saw the defendant coming up behind the victim with a gun
in his hand. Gorman turned and began running for cover
behind the truck she was initially sitting on. Gorman
heard one shot, then turned and saw the defendant shoot
the victim in the back as he was running away. Gorman
testified that the defendant stood over the victim while
still holding a gun, then walked away. Gorman further
testified that Pluck ran up to the victim, who was lying
on the ground, and began kicking and beating him until
Miller intervened and covered the victim with her body.

Gorman described the gun held by the defendant as having
a big black handle, chrome plating, and a barrel. On
cross-examination, Gorman admitted that she did not
notice the defendant leave the club and retrieve a
weapon, but also testified that she was not looking in
the direction of the club until people began fleeing.
Gorman testified that she did not come forward earlier
out of fear.

The defendant did not testify. However, the defense
presented testimony from Dorothy Howard, a cousin of the
defendant, who was bartending at Pyjoe's on the night of
this incident. Howard testified that she witnessed the
fight inside the club, but denied ever seeing the
defendant with a gun. According to Howard, the defendant
never left the club that night.

Elsie Sonnier also testified on the defendant's behalf.
Sonnier was the proprietor of Pyjoe's and has known the
defendant since he was sixteen. Sonnier testified that
she heard shots fired in the bar and saw a big fight.
Sonnier also testified that she left the bar to use an
outside phone to call the police. Sonnier stated that, at
the time the victim was shot, she was on the phone with
the police, and the defendant was still in the club.

Hammond Police officers were immediately dispatched

15

following calls to 911 services. Lt. Paul Miller of the Hammond Police Department was the shift commander on duty at the time of this incident and was involved in the investigation. When Lt. Miller arrived at the scene, the police had recovered a .25 pistol outside the bar, near a bloodstain associated with where the victim fell. Based on statements gathered from witnesses at the scene, Lt. Miller concluded that three shots had been fired inside the bar. The police recovered bullet fragments from the jukebox and a wall, but could not account for the third shot they believed to have been fired inside the bar. Based on his investigation, Lt. Miller believed that Winston "Pluck" Ellis had fired the three shots inside the bar.

Before the police arrived on the scene, the victim was taken by private vehicle to North Oaks Medical Center. Officer Thomas Mushinsky attempted to speak to the victim as he was being wheeled into emergency surgery. Officer Mushinsky asked the victim who had done this to him, and the victim replied, "Pluck, and, and." The victim was immediately taken into emergency surgery.

Dr. Jeff Liner, the surgeon who operated on the victim, testified that the victim had an entrance wound in his left upper buttock area and that the trajectory of the bullet went left to right, and upward, so that the bullet could be felt in the right upper quadrant of the victim's abdomen. According to Dr. Liner, the bullet caused massive internal bleeding in the victim's abdominal cavity, which could not be stopped. The victim died later that day of bleeding from the gunshot wound.

Charles R. Watson, Jr., a forensic scientist with the Louisiana State Police Crime Lab, was accepted by the trial court as an expert in firearms examination. Watson examined several pieces of evidence in this matter including the .25 semi-automatic pistol recovered where the victim had collapsed, bullet fragments recovered from

16

the bar, and fragments recovered from the victim. Watson
testified that the .25 caliber weapon was not responsible
for either set of bullet fragments, because each fragment
weighed more than a fully intact .25 caliber bullet.
Watson was not able to determine what caliber or type of
weapon created the bullet fragments in the bar. However,
the bullet fragment recovered from the victim was most
consistent with a nine-millimeter. While nine-millimeters
are most commonly semi-automatic, Watson testified that
he had dealt with one nine-millimeter revolver during his
eight years of laboratory work. Watson stated that Ruger
was the only company he was aware of that manufactured a
nine-millimeter revolver.

Alan Ordeneaux was a patrolman at this time for the
Hammond Police Department. During the afternoon of
September 1, 2001, he received a dispatch that the
defendant was in a vehicle travelling westbound on U.S.
Hwy. 190. Officer Ordeneaux was able to observe the
vehicle that the defendant was travelling in and
initiated a felony stop wherein the defendant was ordered
out of the vehicle at gunpoint. The defendant was taken
into custody and charged with second degree murder. The
defendant's vehicle was searched, but no weapon was
recovered.

Dennis Peavey, a detective with the Hammond Police
Department, swore out the affidavit in support of the
search warrant for the defendant's residence at 718 North
Cherry Street. He reported that no weapon was recovered
during this search, but the police recovered a leather
holster for a revolver, a .22 caliber cartridge, and a
.38 special cartridge, Peavey also took a statement from
defendant, wherein the defendant denied shooting the
victim.[25]

_____

[25] <u>State v. Johnson</u>, 2008-KA-1575, 2009 WL 839518 at *1-4
(La. App. 1st Cir. 3/27/09); State Rec., Vol 7 of 7.

III. <u>Petitioner's Claims</u>

    A.   <u>Sufficiency of the Evidence</u>

Johnson claims there was insufficient evidence to support his conviction due to the lack of physical evidence linking him to the crime, and because the eyewitness testimony linking him to the crime is in direct conflict with the physical evidence.

On direct appeal, the Louisiana First Circuit Court of Appeal rejected Johnson's sufficiency of the evidence claim, holding:

> The standard of review for the sufficiency of the evidence to uphold a conviction is whether, when viewing the evidence in the light most favorable to the prosecution, a rational trier of fact could conclude the State proved the essential elements of the crime and the defendant's identity as the perpetrator of that crime beyond a reasonable doubt. <u>See</u> La.Code Crim. P. art. 821; <u>State v. Johnson</u>, 461 So.2d 673, 674 (La.App. 1st Cir.1984). The <u>Jackson v. Virginia</u>, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979), standard of review incorporated in Article 821 is an objective standard for testing the overall evidence, both direct and circumstantial, for reasonable doubt. <u>State v. Nevers</u>, 621 So.2d 1108, 1116 (La. App. 1st Cir.), <u>writ denied</u>, 617 So.2d 906 (La.1993). When analyzing circumstantial evidence, Louisiana Revised Statute 15:438 provides the fact finder must be satisfied that the overall evidence excludes every reasonable hypothesis of innocence. <u>Nevers</u>, 621 So.2d at 1116.
>
> Louisiana Revised Statutes 14:30.1(A)(1) defines second degree murder, in pertinent part, as the killing of a human being: "When the offender has a specific intent to

18

kill or to inflict great bodily harm[.]" "Specific
criminal intent is that state of mind which exists when
the circumstances indicate that the offender actively
desired the prescribed criminal consequences to follow
his act or failure to act." La. R.S. 14:10(1). Specific
intent may be proved by direct evidence, such as
statements by a defendant, or by inference from
circumstantial evidence, such as a defendant's actions or
facts depicting the circumstances. State v. Cummings,
99-3000 (La. App. 1 Cir. 11/3/00), 771 So.2d 874, 876.

The trier of fact is free to accept or reject, in whole
or in part, the testimony of any witness. State v.
Richardson, 459 So .2d 31, 38 (La. App. 1st Cir.1984).
Moreover, where there is conflicting testimony about
factual matters, the resolution of which depends upon a
determination of the credibility of the witnesses, the
matter is one of the weight of the evidence, not its
sufficiency. Richardson, 459 So.2d at 38. When a case
involves circumstantial evidence and the trier of fact
reasonably rejects the hypothesis of innocence presented
by the defense, that hypothesis falls, and the defendant
is guilty unless there is another hypothesis that raises
a reasonable doubt. State v. Moten, 510 So.2d 55, 61
(La.App. 1st Cir.), writ denied, 514 So.2d 126 (La.1987).

The defendant presents three reasons why he believes the
evidence presented by the State is insufficient to
support his conviction for second degree murder. First,
the defendant maintains that the State's eyewitness
accounts of the shooting are inconsistent with the
medical testimony regarding the trajectory of the bullet
through the victim's body. We disagree. Dr. Liner
testified that the bullet traveled left to right and
slightly upward through the victim's body. The evidence
presented by the State reflects that the victim was
fleeing from the shooter and had turned left outside the
club when he was shot. The jury had a reasonable basis to
conclude that the medical testimony was consistent with

the eyewitness accounts of the victim being shot while he ran.

Second, the defendant argues that the physical evidence presented indicated that the bullet fragments recovered from the victim were consistent with a nine-millimeter weapon. The State's eyewitnesses all described the gun held by the defendant as a revolver. Watson, the State's weapons expert, testified that nine-millimeter revolvers, while rare, are manufactured by at least one company. Viewing this evidence in the light most favorable to the State, we cannot say this evidence fails to support the element of proof that the weapon observed in the defendant's hands was used to fire the fatal shot at the victim. Merely because a particular type of weapon is said to be rare or uncommon does not negate the possibility that the defendant possessed such a weapon. Clearly, the jury had a basis to conclude that the defendant fired the weapon in his hands at the victim.

Finally, the defendant argues that when the victim was asked who did this to him shortly before being taken to surgery, he stated, "Pluck, and, and." The State established that the victim and Pluck had engaged in a physical fight shortly before the victim was shot. Moreover, the victim was shot in the back as he fled the club, thus he may not have known who fired the shot that struck him. Further, there was eyewitness testimony that both the defendant and Pluck stood over the victim after he was shot and that Miller had to throw herself over him to protect him from sustaining further injury due to their actions. Clearly, the jury had a basis to conclude that the victim's purported identification of Pluck as the shooter was inaccurate or that the victim's critical medical condition prevented him from fully answering the question.

On appeal, this court will not assess the credibility of witnesses or reweigh the evidence to overturn a fact

finder's determination of guilt. <u>State v. Glynn</u>, 94-0332
(La. App. 1 Cir. 4/7/95), 653 So.2d 1288, 1310, <u>writ</u>
<u>denied</u>, 95-1153 (La.10/6/95), 661 So.2d 464. A reviewing
court is not called upon to decide whether it believes
the witnesses or whether the conviction is contrary to
the weight of the evidence. <u>State v. Smith</u>, 600 So.2d
1319, 1324 (La.1992). The credibility of a witness is a
matter of the weight of the evidence, not sufficiency.
<u>State v. Johnson</u>, 446 So.2d 1371, 1375 (La. App. 1st
Cir.), <u>writ</u> <u>denied</u>, 449 So.2d 1347 (La.1984). The fact
that the record contains evidence that conflicts with the
testimony accepted by the trier of fact does not render
the evidence accepted by the trier of fact insufficient.
<u>State v. Azema</u>, 633 So.2d 723, 727 (La. App. 1st
Cir.1993), <u>writ</u> <u>denied</u>, 94-0141 (La.4/29/94), 637 So.2d
460.

Viewing the evidence in the light most favorable to the
prosecution, we find the evidence sufficiently supports
the jury's verdict of second degree murder. In reviewing
the evidence, we cannot say the jury's determination was
irrational under the facts and circumstances presented to
them. <u>See</u> <u>State v. Ordodi</u>, 2006-0207 (La.11/29/06), 946
So.2d 654, 662. Moreover, the circumstantial evidence
presented establishes that the jury had a basis to
conclude that the defendant was in fact, the person
responsible for the victim's death.[26]

The Louisiana Supreme Court then denied Johnson's related writ

application without assigning additional reasons.[27]

Because a sufficiency of the evidence claim presents a mixed

---

[26] <u>State v. Johnson</u>, No. 2008-KA-1575, 2009 WL 839518 at *4-6
(La. App. 1st Cir. 3/27/09); State Rec., Vol. 7 of 7.

[27] <u>State ex rel. Johnson v. State</u>, 25 So.3d 132 (La. 1/22/10)
(2009-KO-1003); State Rec., Vol. 7 of 7.

question of law and fact, this Court must defer to the state court's decision rejecting petitioner's claim unless he shows that the decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1); Taylor v. Day, Civ. Action No. 98-3190, 1999 WL 195515, at *3 (E.D. La. Apr. 6, 1999), aff'd, 213 F.3d 639 (5th Cir.2000). To that end, it must be remembered that "a federal court may not overturn a state court decision rejecting a sufficiency of the evidence challenge simply because the federal court disagrees with the state court.... Because rational people can sometimes disagree, the inevitable consequence of this settled law is that judges will sometimes encounter convictions that they believe to be mistaken, but that they must nonetheless uphold." Cavazos v. Smith, 132 S.Ct.2, 4 (2011).

     In the instant case, petitioner has not made the showing required to be granted relief under the AEDPA. The state court correctly noted that claims of insufficient evidence are to be analyzed pursuant to the standard set forth in Jackson v. Virginia, 443 U .S. 307 (1979), which held that "the relevant question is

whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Id. at 319. Accordingly, "[t]he Jackson inquiry 'does not focus on whether the trier of fact made the *correct* guilt or innocence determination, but rather whether it made a *rational* decision to convict or acquit.' " Santellan v. Cockrell, 271 F.3d 190, 193 (5th Cir.2001) (quoting Herrera v. Collins, 506 U .S. 390, 402 (1993)) (emphasis added). Moreover, because the state court's decision applying the already deferential Jackson standard must be assessed here under the strict and narrow standards of review mandated by the AEDPA, the standard to be applied by this Court is in fact "twice-deferential." Parker v. Matthews, 132 S.Ct. 2148, 2152 (2012); see also Coleman v. Johnson, 132 S.Ct. 2060, 2062 (2012).[28]

---

[28] Further, it must be remembered that Louisiana's circumstantial evidence standard requiring that every reasonable hypothesis of innocence be excluded does not apply in federal habeas corpus proceedings; in these proceedings, only the Jackson standard need be satisfied, even if state law would impose a more demanding standard of proof. Foy v. Donnelly, 959 F.2d 1307, 1314 n. 9 (5th Cir.1992); Higgins v. Cain, Civ. Action No. 09-2632, 2010 WL 890998, at *21 n. 38 (E.D.La. Mar. 8, 2010), aff 'd, 434 Fed. App'x 405 (5th Cir.2011), cert. denied, 132 S.Ct. 1713 (2012); Williams v. Cain, No. 07-4148, 2009 WL 224695, at *4

Review of the sufficiency of the evidence does not include review of the weight of the evidence or the credibility of the witnesses, because those determinations are the exclusive province of the jury. United States v. Young, 107 Fed. Appx. 442, 443 (5th Cir.2004) (citing United States v. Garcia, 995 F.2d 556, 561 (5th Cir.1993)); see Jackson, 443 U.S. at 319 (noting that it is the jury's responsibility "to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts"). Thus, all credibility choices and conflicting inferences must be resolved in favor of the verdict. Ramirez v. Dretke, 398 F.3d 691, 695 (5th Cir.2005).

Johnson does not argue that the State failed to establish any of the essential statutory elements of his conviction, but rather,

---

(E.D.La. Jan. 29, 2009), aff'd, 408 Fed. App'x 817 (5th Cir.2011); Davis v. Cain, Civ. Action No. 07-6389, 2008 WL 5191912, at *14 (E.D.La. Dec. 11, 2008); Wade v. Cain, Civil Action No. 05-0876, 2008 WL 2679519, at *6 (W.D.La. May 15, 2008) (Hornsby, M.J .) (adopted by Stagg, J., on July 3, 2008), aff'd, 372 Fed. App'x 549 (5th Cir. Apr. 9, 2010); see also Coleman, 132 S.Ct. at 2064 ("Under Jackson, federal courts must look to state law for the substantive elements of the criminal offense, but the minimum amount of evidence that the Due Process Clause requires to prove the offense is purely a matter of federal law." (citation and internal quotation marks omitted)).

contends the State failed to prove beyond a reasonable doubt his identity as the shooter because of conflicts or inconsistencies between the physical evidence and the eyewitness testimony. Specifically, Johnson argues the evidence was insufficient for three reasons: (1) the trajectory of the bullet as it went through the victim's body conflicts with the eyewitness descriptions as to how Johnson was holding the weapon; (2) the physical evidence indicated the bullet fragments recovered from the victim were consistent with a nine-millimeter weapon, but the eyewitnesses testified that Johnson was holding a revolver; and (3) the victim did not name Johnson as the shooter, but rather shortly before surgery identified someone other than Johnson as the shooter, by stating when asked who did this to him, "Pluck, and, and."

In the instant case, petitioner was identified as the shooter by three eyewitnesses who each testified they saw petitioner shoot the victim.[29] That is more than adequate, in that, under both federal and Louisiana law, the testimony of a single eyewitness is generally sufficient to support a conviction. See <u>United States v.</u>

---

[29] State Rec., Vol. 5 of 7, Trial Transcript, pp. 387-394; 416-418, 423-424; 437-439.

King, 703 F.2d 119, 125 (5th Cir.1983); State v. Neal, 796 So.2d 649, 658 (La.2001); see also Phillips v. Cain, Civ. Action No. 11-2725, 2012 WL 2564926, at *13 (E.D.La. Apr.11, 2012), adopted, 2012 WL 2565025 (E.D. La. July 2, 2012).

To the extent that Johnson is contending the eyewitnesses were not credible, that was an issue for the jury, not a federal *habeas* court. Where a petitioner's insufficient evidence claim is based on the credibility of witnesses, a federal habeas court generally will not grant relief. See Schlup v. Delo, 513 U.S. 298, 330, 115 S.Ct. 851, 130 L.Ed.2d 808 (1995) ("[U]nder Jackson [v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979)], the assessment of the credibility of witnesses is generally beyond the scope of review."); Ramirez v. Dretke, supra.

The Louisiana First Circuit Court of Appeal carefully considered and rejected each of Johnson's specific arguments with regard to inconsistencies in the evidence presented. For the reasons noted by the state court, the evidence in this case, viewed in the light most favorable to the prosecution, was sufficient for any rational trier of fact to find Johnson guilty beyond a reasonable doubt. Therefore, he cannot show that the state court's

26

decision rejecting his claim was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States.

B.    Ineffective Assistance of Counsel

Johnson claims that his defense counsel was ineffective in the following respects: (a) denying him the right to testify; (b) denying him the right to present a defense witness; and (c) failing to request a special jury instruction regarding the mandatory penalty for second degree murder. He also alleges he was denied a fair trial based on cumulative error.

The United States Supreme Court has established a two-pronged test for evaluating claims of ineffective assistance of counsel. Specifically, a petitioner seeking relief must demonstrate both that counsel's performance was deficient and that the deficient performance prejudiced his defense. Strickland v. Washington, 466 U.S. 668, 697 (1984). A petitioner bears the burden of proof on such a claim and "must demonstrate, by a preponderance of the evidence, that his counsel was ineffective." Jernigan v. Collins, 980 F.2d 292, 296 (5th Cir.1993); see also Clark v. Johnson, 227 F.3d 273, 284 (5th Cir.2000). If a court finds that a petitioner has made an insufficient showing as to either of the two prongs of inquiry, *i.e.* deficient performance or actual prejudice, it may dispose of the ineffective assistance claim without addressing the

28

other prong. <u>Strickland</u>, 466 U.S. at 697.

To prevail on the deficiency prong of the <u>Strickland</u> test, a petitioner must demonstrate that counsel's conduct fails to meet the constitutional minimum guaranteed by the Sixth Amendment. <u>See Styron v. Johnson</u>, 262 F.3d 438, 450 (5th Cir.2001). "Counsel's performance is deficient if it falls below an objective standard of reasonableness." <u>Little v. Johnson</u>, 162 F.3d 855, 860 (5th Cir.1998). Analysis of counsel's performance must take into account the reasonableness of counsel's actions in light of all the circumstances. <u>See Strickland</u>, 466 U.S. at 689. "[I]t is necessary to 'judge ... counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct.'" <u>Lockhart v. Fretwell</u>, 506 U.S. 364, 371 (1993) (quoting <u>Strickland</u>, 466 U.S. at 690). A petitioner must overcome a strong presumption that the conduct of his counsel falls within a wide range of reasonable representation. See <u>Crockett v. McCotter</u>, 796 F.2d 787, 791 (5th Cir.1986); <u>Mattheson v. King</u>, 751 F.2d 1432, 1441 (5th Cir.1985).

To prevail on the prejudice prong of the <u>Strickland</u> test, a petitioner "must show that there is a reasonable probability that,

29

but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 694. In this context, a reasonable probability is "a probability sufficient to undermine confidence in the outcome." Id. In making a determination as to whether prejudice occurred, courts must review the record to determine "the relative role that the alleged trial errors played in the total context of [the] trial." Crockett, 796 F.2d at 793.

Because the state courts rejected petitioner's ineffective assistance of counsel claims on the merits and because such claims present a mixed question of law and fact, this Court must defer to the state court decision unless it was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1); Moore v. Cockrell, 313 F.3d 880, 881 (5th Cir.2002). Moreover, the United States Supreme Court recently explained that, under the AEDPA, federal habeas corpus review of ineffective assistance of counsel claims is in fact doubly deferential:

> The pivotal question is whether the state court's application of the Strickland standard was unreasonable. This is different from asking whether defense counsel's

30

performance fell below Strickland's standard. Were that the inquiry, the analysis would be no different than if, for example, this Court were adjudicating a Strickland claim on direct review of a criminal conviction in a United States district court. Under AEDPA, though, it is a necessary premise that the two questions are different. For purposes of § 2254(d)(1), an unreasonable application of federal law is different from an incorrect application of federal law. A state court must be granted a deference and latitude that are not in operation when the case involves review under the Strickland standard itself.

A state court's determination that a claim lacks merit precludes federal habeas relief so long as fairminded jurists could disagree on the correctness of the state court's decision. Yarborough v. Alvarado, 541 U.S. 652, 664, 124 S.Ct. 2140, 158 L.Ed.2d 938 (2004). And as this Court has explained, "[E]valuating whether a rule application was unreasonable requires considering the rule's specificity. The more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations." Ibid. "[I]t is not an unreasonable application of clearly established Federal law for a state court to decline to apply a specific legal rule that has not been squarely established by this Court." Knowles v. Mirzayance, 556 U.S. 111, ----, 129 S.Ct. 1411, 1413-14, 173 L.Ed.2d 251 (2009) (internal quotation marks omitted).

Harrington v. Richter, 131 S.Ct. 770, 785-86 (2011) (citation omitted). The Supreme Court then explained:

Surmounting Strickland's high bar is never an easy task. An ineffective-assistance claim can function as a way to escape rules of waiver and forfeiture and raise issues not presented at trial, and so the Strickland standard must be applied with scrupulous care, lest intrusive post-trial inquiry threaten the integrity of the very

31

adversary process the right to counsel is meant to serve.
Even under de novo review, the standard for judging
counsel's representation is a most deferential one.
Unlike a later reviewing court, the attorney observed the
relevant proceedings, knew of materials outside the
record, and interacted with the client, with opposing
counsel, and with the judge. It is all too tempting to
second-guess counsel's assistance after conviction or
adverse sentence. The question is whether an attorney's
representation amounted to incompetence under prevailing
professional norms, not whether it deviated from best
practices or most common custom.

Establishing that a state court's application of
Strickland was unreasonable under § 2254(d) is all the
more difficult. *The standards created by Strickland and
§ 2254(d) are both highly deferential, and when the two
apply in tandem, review is doubly so.* The Strickland
standard is a general one, so the range of reasonable
applications is substantial. Federal habeas courts must
guard against the danger of equating unreasonableness
under Strickland with unreasonableness under § 2254(d).
*When § 2254(d) applies, the question is not whether
counsel's actions were reasonable. The question is
whether there is any reasonable argument that counsel
satisfied Strickland's deferential standard.*

Id. at 788 (citations omitted; emphasis added). This Court finds

that, under those stringently deferential standards, it simply

cannot be said that relief is warranted in the instant case.

In the state post-conviction proceedings, the district court

denied petitioner's claims, holding:

I'll start off that there is no evidence before this
Court to contradict the testimony of Mr. Thiel.  I have

32

allegations and petitions.   That's what they are, allegations.

Addressing a special jury charge issue raised in the petition looking at page 16 of the petition Mr. Johnson states as follows:  In light of the fact the petition in this case wherein the State's evidence was unreliable and weak, the jury should have been instructed on the mandatory sentence of second degree murder.  The jurors in petitioner's case was never informed of the consequences of their verdict.  This error is attributed to Counsel.  In the trial court's instructions to the jury, the trial court failed to read the penalty provisions of the crimes charged of second degree murder.

Those are the allegations made as to that specific allegation of error.  And as we know, the record will indicate in this case absolutely indicates otherwise. The jury charges were read to the jury by the trial judge. In fact, it held the jury to the fact that a mandatory life sentence would result in the event of a conviction for second degree murder.

The other issues raised were the right to testify. Mr. Thiel, I think, has convinced me that there has been no error committed or no ineffective assistance of counsel in that area.  Mr. Thiel testified, and I wrote down his testimony as best I could.  I believe I am quoting fairly accurately.  He said, "If he wanted to testify I would have advised him of what I thought, that's my standard practice."

As to the allegations made by Mr. Johnson that Mr. Thiel told him he couldn't testify, Mr. Thiel was adamant when he said, and I quote, That did not happen, unquote. Finally he said, quote, It was his decision, closed quote, in reference to his decision not to testify.

So I don't feel there has been any evidence to indicate that Mr. Johnson's rights relative to his right to testify have been infringed or – I don't believe any of his rights concerning his right to testify were violated in any way; and certainly there has been nothing to indicate ineffective assistance of counsel as it pertains to his rights to testify.

Also the ruling of the Court is the same relative to his right of compulsory process and his right of obtaining witnesses and presenting witnesses in his defense, particularly Winston Ellis also known as Pluck.

Obviously, Mr. Thiel [sic] a lot of work.  He found that he was in custody.  He knew where he was.  And also knew – that he worked out a plea agreement with the State, and the evidence submitted by the State here today indicates that it did work out an agreement with the State or a plea agreement with the State.  Mr. Thiel further testified that he didn't call him and didn't subpoena him as a witness because he knew where he had entered into a plea agreement with the State and Mr. Thiel was convinced that Mr. Ellis would have said he, Ellis, didn't shoot [sic] the victim.

Certainly, again, we are talking about trial strategy and it appears to me that the decision made in this instance was probably the right decision to make and in any event it certainly doesn't rise to the level of ineffective assistance of counsel by Mr. Thiel not presenting that witness.

Having heard all the evidence in this matter, your petition for postconviction relief is denied.[30]

---

[30] Rec. Doc. No. 1, Memorandum in Support of Petition for Writ of Habeas Corpus, Exhibit D, Transcript of Post-Conviction Relief Evidentiary Hearing, pp. 34-36;  see also State Rec. Vol.

Johnson's related writ applications were then likewise denied by the Louisiana First Circuit Court of Appeal[31] and by the Louisiana Supreme Court without additional reasons assigned.[32]

### 1.   Denial of right to testify

Johnson claims that his defense counsel, Michael Thiel, refused to allow him to testify, telling Johnson "it's my decision to make on whether or not to put you on the stand, not yours."[33] Johnson alleges that he was denied the opportunity to tell his version of the story and explain that he did not shoot the victim.

It is well settled that a criminal defendant has the right to testify on his own behalf pursuant to the Fifth, Sixth and Fourteenth Amendments. Rock v. Arkansas, 483 U.S. 44, 107 S.Ct. 2704, 97 L.Ed.2d 37 (1987); Bower v. Quarterman, 497 F.3d 459, 473 (5th Cir.2007); Sayre v. Anderson, 238 F.3d 631, 634 (5th

---

7 of 7, Transcript of Post-Conviction Relief Evidentiary Hearing (the transcript located in the state court record is incomplete and missing pages 33 and 35).

[31] State v. Johnson, No. 2011 KW 2410 (La. App. 1st Cir. March 26, 2012); State Rec., Vol. 7 of 7.

[32] State ex rel. Leroy P. Johnson v. State, No. 2012 KH 0934 (La. September 21, 2012); State Rec., Vol. 7 of 7.

[33] Rec. Doc. No. 1, p. 12.

Cir.2001); <u>Jordan v. Hargett</u>, 34 F.3d 310, 312 (5th Cir.1994).
When, as here, the petitioner alleges that his counsel, not the
court or the State, prevented him from testifying, the United
States Court of Appeals for the Fifth Circuit has held that the
"'appropriate vehicle for such claims is a claim of ineffective
assistance of counsel.'" <u>Sayre</u>, 238 F.3d at 634 (quoting <u>U.S. V.
Brown</u>, 217 F.3d 247, 258-59 (5th Cir. 2000).

A defendant can only waive his right to testify if that waiver
is knowing, intelligent and voluntary. <u>Bower</u>, 497 F.3d at 473
(<u>Emery v. Johnson</u>, 139 F.3d 191, 198 (5th Cir.1997)). A violation
of this right occurs only if the "'final decision that [the
defendant] would not testify was made against his will.'" <u>Emery</u>,
139 F.3d at 198 (quoting <u>United States v. Teague</u>, 908 F.2d 752, 759
(11th Cir.1990), <u>reh'q granted</u>, 953 F.2d 1525 (11th Cir.), <u>cert.
denied</u>, 506 U.S. 842, 113 S.Ct. 127, 121 L.Ed.2d 82 (1992)).

A habeas petitioner has the burden of proving that he was
denied this constitutional right. It is not enough for a habeas
petitioner merely to state that he told his trial attorney that he
wanted to testify and that his attorney forbade him doing so.
<u>Turcios v. Dretke</u>, No. H-97-0515, 2005 WL 3263918, at *6

36

(S.D.Tex.2005) (citing Underwood v. Clark, 939 F.2d 473, 475–76 (7th Cir.1991)); see also, Davis v. Prince, No. 11-0712, 2011 WL 5878155, at *16 (E.D.La. Sept.28, 2011) (Wilkinson, M.J.), report and recommendation adopted, No. 11-0712, 2011 WL 5878152, at *1 (E.D.La. Nov.23, 2011) (Feldman, J.); Jones v. Cain, No. 10-213, 2010 WL 5375949, at *3 (E.D.La. Dec.17, 2010) (Vance, J.); Davis v. Quarterman, No. H-06-3606, 2007 WL 1886272, at *6 (S.D.Tex. June 29, 2007). The United States Seventh Circuit Court of Appeals in Underwood specifically noted the potential problems likely to arise if habeas petitioners, making similar arguments, are not required to satisfy the required burden of proof. Underwood, 939 F.2d at 475-76. Adopting the reasoning in Siciliano v. Vose, 834 F.2d 29, 31 (1st Cir.1987), the Underwood Court recognized that such an assertion, even if made under oath was inadequate to meet that burden:

> ... this barebones assertion by a defendant, albeit made under oath, is insufficient to require a hearing or other action on his claim that his right to testify in his own defense was denied him. It just is too facile a tactic to be allowed to succeed. Some greater particularity is necessary—and also we think some substantiation is necessary, such as an affidavit from the lawyer who allegedly forbade his client to testify—to give the claim sufficient credibility to warrant a further investment of

37

judicial resources in determining the truth of the claim.

Id., 939 F.2d at 475-76 (citations omitted).

Citing Underwood, the United States Fifth Circuit Court of Appeals has also indicated the same concerns:

> Courts have observed that allowing a bare assertion of a right-to-testify violation to precipitate the further investment of judicial resources is problematic. See [Underwood, 939 F.2d at 476] ... (stating that a conclusory assertion by a defendant that his right to testify was denied him is insufficient to require a hearing because "[I]t just is too facile a tactic to be allowed to succeed"). We agree that there is "a grave practical difficulty in establishing a mechanism that will protect a criminal defendant's personal right ... to testify in his own behalf without rendering the criminal process unworkable."

United States v. Martinez, 181 F.3d 627, 628 (5th Cir.1999) (quoting Underwood, 939 F.2d at 475). For the following reasons, it is evident that the state court decision rejecting petitioner's ineffective assistance of counsel claims was neither contrary to, nor involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States.

Johnson presents only his unsupported assertion that counsel did not allow him to testify. Despite Johnson's allegation that

after each witness testified for the State, he practically "begged" counsel to testify,[34] the record contains no such evidence to support his claim.  The trial record does not suggest that Johnson made known to the trial court that his counsel was refusing to allow him to testify despite a stated desire to do so. Nor did petitioner offer any testimony or evidence to this effect at the state post-conviction evidentiary hearing.[35]  Of course, the mere fact that petitioner failed to stand up in open court and insist on testifying should not be dispositive of the issue.  See United States v. Mullins, 315 F.3d 449, 455 (5th Cir. 2002); see also United States v. Araujo, 77 Fed. App'x 276 (5th Cir. 2003). Nevertheless, the Court cannot ignore the fact that Johnson has never presented *any* evidence either to the state courts or to this Court to corroborate his allegations.

Furthermore, in this case, defense counsel was asked at the evidentiary hearing whether he told petitioner he could not testify, and counsel testified emphatically, "I can tell you that

---

[34]  Rec. Doc. No. 1, p. 18.

[35] State Rec., Vol. 7 of 7, Transcript of Post-Conviction Evidentiary Hearing, pp. 26-27.

did not happen."[36]   In fact, he explained, even if he advised against testifying, if petitioner still insisted on testifying, he would have allowed petitioner to testify against his advice.[37]   He further stated, "In my entire 30-years-plus of practice I have never ever forced a client not to testify."[38]

In light of the complete lack of evidentiary support for Johnson's entirely self-serving allegations, he has failed to meet his burden to establish that he is entitled to relief. Accordingly, this claim should be denied.

> 2.   Failure to present a defense and to have compulsory process for obtaining witnesses

Johnson claims that his counsel was ineffective in failing to subpoena Winston Ellis, known as "Pluck," as a witness, because Johnson wanted to present his testimony regarding, "the truth of what happen on that night... [h]e did not commit the crimes he was charged with and subsequently was convicted of."[39]   However, this

---

[36] <u>Id</u>. at p. 9.

[37] <u>Id</u>. at p. 8.

[38] <u>Id</u>. at p. 20.

[39] Rec. Doc. No. 1, p. 22.

claim fails for two reasons.  First, Johnson has not presented any evidence whatsoever as to what Pluck would have said if called to testify, much less that he would have testified favorably.  Second, the record evidence shows counsel clearly made a judgment call, which was reasonable under the circumstances, not to call Pluck as a witness.

"'Complaints of uncalled witnesses are not favored, because the presentation of testimonial evidence is a matter of trial strategy and because allegations of what a witness would have testified are largely speculative.' " Graves v. Cockrell, 351 F.3d 143, 156 (5th Cir.2003) (quoting Buckelew v. United States, 575 F.2d 515, 521 (5th Cir.1978)).  "'Failure to present [evidence does] not constitute 'deficient' performance within the meaning of Strickland if [counsel] could have concluded, for tactical reasons, that attempting to present such evidence would be unwise.'" Williams v. Cockrell, 31 Fed. Appx. 832 (5th Cir.2002) (quoting Williams v. Cain, 125 F.3d 269, 278 (5th Cir. 1997)).

In this case, Johnson asserts that Pluck would have testified in a manner to establish that Johnson did not shoot the victim. However, Johnson has not submitted any evidence or affidavits to

establish the substance of the expected testimony of Pluck.  He has presented nothing, but his own self-serving allegation that Pluck would have testified in his favor.   Thus, Johnson's allegations that Pluck would have testified favorably and demonstrated Johnson's innocence amount to nothing more than sheer speculation on his part.

Moreover, the record in this case supports that defense counsel made an informed, reasoned, tactical decision not to call Pluck as a witness.  According to defense counsel's testimony, he concluded based on the circumstances that Pluck should not be called as a witness, because he felt his testimony would have been detrimental to Johnson. The following colloquy at the evidentiary hearing shows counsel made a well-reasoned strategic decision in that regard:

> Q.   His second claim regards Mr. Winston Ellis, does that name ring a bell to you?
>
> A.   Yeah.  I think he was referred to as Pluck during the course of trial.
> ...
> Q.   Do you have any independent knowledge of whether or not you tried to locate, subpoena or interview Pluck or Winston Ellis?
>
> A.   As far as trying to locate, I knew where he was.

He was in State custody. Actually, the State, I believe, had entered into a deal for him to testify against Mr. Johnson at trial. I was given an indication of what he was going to testify about, so I had a general idea of what he would say if he took the stand. I did not subpoena him. I did not call him as a witness from a pure strategy standpoint that the State had entered into an agreement with him to testify against Mr. Johnson. So I had to, from a strategy standpoint, think that it would not be a good idea to call him as a witness because the question that had to have been posed to him is "did you kill the victim." Based on everything I knew at that point in time his response would have been negative.[40]

On this record, Johnson has failed to establish that Pluck would have testified in the manner he alleges or that counsel was deficient in pursuing Pluck's testimony. Johnson has not only failed to present any evidence as to what Pluck's testimony would have been, but the record evidence actually contradicts Johnson's assertion that Pluck's testimony would have been favorable. The state court's denial of relief on this claim was not contrary to, or an unreasonable application of <u>Strickland</u>. Johnson is not entitled to relief on this claim.

### 3.   Failure to request a specific jury instruction

---

[40] State Rec., Vol. 7 of 7, Transcript of State Post-Conviction Evidentiary Hearing, pp. 9-10.

Johnson claims that counsel was ineffective for failing to request an instruction informing jurors that a life sentence was mandatory for a second-degree murder conviction. In rejecting this claim, the state district court found that the record indicated the jury charge was in fact read to the jury.

Under Louisiana law, "[w]hen the penalty to be imposed is a mandatory one, our law requires the trial judge to inform the jury, on request of the defendant, of the penalty and to permit defense counsel to argue the penalty to the jury." State v. Hooks, 421 So.2d 880, 886 (La.1982). In the instant case, while defense counsel had no independent recollection as to whether or not he requested a special jury charge, he testified that normally the instructions would include the penalty.[41] In fact, as the record in this case demonstrates and the state district court found, the jury *was* advised of the mandatory penalty for second degree murder.[42] Accordingly, this claim fails.

In summary, Johnson has failed to demonstrate that the state

---

[41] Id. at p. 13.

[42] State Rec., Vol. 5 of 7, Trial transcript, pp. 573-574, 580.

court's decision denying his ineffective assistance of counsel claim was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States. Accordingly, applying the AEDPA's deferential standard, this Court should likewise reject the claim.

### 4.   Cumulative error

Finally, Johnson argues that cumulatively, his assertions of ineffective assistance of counsel warrant relief.   Petitioner is incorrect.  Where, as here, the individual contentions are meritless, that result cannot be changed simply by asserting them collectively.  Pondexter v. Quarterman, 537 F.3d 511, 525 (5th Cir.2008), cert. denied, 129 S.Ct. 1544 (2009); United States v. Hall, 455 F.3d 508, 520 (5th Cir.2006); Miller v. Johnson, 200 F.3d 274, 286 n. 6 (5th Cir.2000); Sholes v. Cain, Civ. Action No. 06-1831, 2008 WL 2346151, at *17 (E.D. La. June 6, 2008), aff'd, No. 08-30654, 2010 WL 1141590 (5th Cir. Mar. 25, 2010); Simms v. Cain, Civ. Action No. 07-966, 2008 WL 624073, at *26 (E.D,.La. Mar. 8, 2008); Spicer v. Cain, Civ. Action No. 07-3770, 2007 WL 4532221, at *10 (E.D.La. Dec. 19, 2007); Franklin v. Thompson, Civ. Action No. 07-543, 2007 WL 3046642, at *13 (E.D.La. Oct. 17, 2007). As the

45

United States Fifth Circuit Court of Appeals noted with respect to analogous claims of cumulative error: "Twenty times zero equals zero." Mullen v. Blackburn, 808 F.2d 1143, 1147 (5th Cir.1987).

### RECOMMENDATION

**IT IS RECOMMENDED** that petitioner's application for federal *habeas corpus* relief be **DISMISSED WITH PREJUDICE.**

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object. 28 U.S.C. § 636(b)(1); Douglass v. United Services Auto. Ass'n, 79 F.3d 1415,

1430 (5th Cir.1996) (en banc).[43]

New Orleans, Louisiana, this 26th day of ___December___, 2013.

ALMA L. CHASEZ
UNITED STATES MAGISTRATE JUDGE

---

[43] Douglass referenced the previously applicable ten-day period for the filing of objections. Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend that period to fourteen days.